562 So.2d 1206 (1990)
Anthony Wayne RIELY
v.
STATE of Mississippi.
No. 07-KA-59140.
Supreme Court of Mississippi.
April 18, 1990.
Carver A. Randle, John Ed Stillions, III, Indianola, Miss., for appellant.
*1207 Mike C. Moore, Atty. Gen., Melanie A. Smith, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION

A.
In this case, Anthony Wayne Riely appealed the Sunflower County Circuit Court's revocation of his probation alleging that his constitutional rights to due process were abrogated. This Court affirms the trial court.

B.
On October 15, 1987, Anthony Wayne Riely was convicted in the Sunflower County Circuit Court of burglarizing a residence. Riely was sentenced to a four-year prison term; however, the sentence was suspended and Riely was placed on four years' probation. One condition of probation involved completion of a rehabilitation program at the Greenwood/Leflore County Restitution Center (Center) in Greenwood, Mississippi.
Nearly two months after being placed in the Center, Riely was "locked up" (presumably in the county jail); he was locked up for alleged violations of the Center's rules (i.e., terms of probation). The Mississippi Department of Corrections (Department) filed an affidavit with the circuit court delineating the violations; however, a "forgiving" Department subsequently requested that the affidavit be disregarded and that Riely be returned to the Center.
On December 8, 1987, a hearing was held in the circuit court during which time the Department's request was considered. The following exchange transpired upon commencement of the hearing:
THE COURT: Mr. Riely, they [the Department] informed me ... that you are pretty much a bad apple out there [at the Center]. Is that right?
RIELY: No, sir.
COURT: Let me tell you something just in case you are. You better go out there and straighten up your act because any further violation of the rules, I am going to have you brought before me, and I am telling Dr. Alonzo [the Center's Director] now to report to me on your progress on a weekly basis, and you have been given a break here to go to the ... Center rather than the penitentiary. Have you ever been to the penitentiary?
RIELY: No, sir.
COURT: Well ... I don't think you want to go. Do you agree with that?
RIELY: No, sir.

Vol. II, at 1 (emphasis added). Basically, Riely did not want to be imprisoned, nor did he want to be returned to the Center where he felt "uncomfortable."
Further exchanges transpired, after which the court admonished Riely:
I am not going to let [you] select where [you] want[] to go and whether [you] can function here or there. .. . We didn't put you in [custody of the Department] to make you feel "comfortable." That's not the object of it. The object ... is to give you something for what you have done against your [fellow] citizens.
The court concluded that Riely's "bad" attitude reflected that "he is not a good candidate for the ... Center." The court then ordered another hearing on the matter, and "graciously" permitted Riely to return to the Center in the meantime. Vol. II, at 2-6. The hearing was held a few days later  on December 10. The affidavit delineating the violations of probation was presented to the court. The violations included: (1) failing to proceed directly to and from one's place of employment; (2) using abusive and obscene language; (3) refusing to work; (4) leaving or attempting to leave the Center without permission; and (5) possessing "prohibited items." Riely pled "guilty" to the first and fifth allegations, and "not guilty" to the others. During questioning by the court, however, Riely admitted he committed the second and fourth violations as well. See, e.g., Vol. II, at 9-10 & 13-14 (re second and fourth violations). In addition to Riely's admissions, *1208 Selby Ware, a Department Field Officer stationed at the Center, provided testimony in support of the allegations. Other evidence presented at the hearing included documentation of the alleged violations  as witnessed and reported by Department officers. See, e.g., Vol. II, at 9-10 & 12 (re violation reports filed by security officials).
After hearing the testimony and Riely's responses to the allegations, the court concluded:
I think your attitude is bad. You need to be subjected to some rather strenuous discipline, and I am going to try something here. I intended probably to put you in the penitentiary, but I am going to impose a sentence of four years on you, but I am going to provide that you complete the RID program at the Mississippi State Penitentiary, and if you successfully complete that, and that's up to you whether you want to do that or not. If you go up there with the attitude that you have got now, they can't do it. You can't complete that, but I am going to let you try to complete that, and that is a program of rather strenuous discipline, work and study and psychiatric counseling, etc., and let you try that, and if you can complete that, they will inform me, and I will suspend the rest of that time and provide that you go to the Center when you get out and see if you can make it then. Now, I am giving you an opportunity to stay out of the penitentiary. You are going to go to the penitentiary, but it is going to be in a special program. You are not going to be mixed with or housed with prisoners, and they will try to work with you and get your attitude improved, and if you can complete that, I will then suspend the rest and provide that you go to the Center, and if you mess up on either one, I am going to send you four years to the ... penitentiary. It's all up to you. You think you would like to try that?
Riely rejected the court's offer and explained: "All I wanted was to go back home and take care of my family... . [C]an I just go to the penitentiary and serve my time instead of coming back to the program?" Riely's wish was the court's command. Vol. II, at 16 & 17.
Before the hearing concluded, Riely complained that he was "coerced into this hearing before I was prepared to get my attorney." He also complained that he signed "waiver-of-rights" documents after being (mis)led to believe that another judge (i.e., Judge Clark, who had presided over the trial for the burglary charge) would preside over the probation-revocation hearing. The court patiently listened and decided to "start all over again" at a later date. In other words, the court: (1) decided to quell any questions of impropriety or accusations of unfairness by "strik[ing] all of this" (i.e., all that transpired at the hearing); and (2) rescheduled another full hearing.
On December 15, the third hearing was held. During the course of the proceeding, Riely informed the court that he was interested in acquiring an attorney and, consequently, he needed more time. The request was denied. The court then reviewed the evidence and determined that Riely's admitted violations and unwavering "bad" attitude warranted revocation of probation. Notably, at the conclusion of the hearing, Riely "lost it"; that is, he became violent, "tussled" with attending deputies, and had to be "carried from the courtroom" while "hollering." Riely's violent actions cost him an added thirty days for contempt.
On March 11, 1988, a fourth hearing was held at the circuit court in response to petitions filed by Riely. A court-appointed attorney represented Riely at the hearing. Basically, Riely was appealing the court's revocation of his probation. The bases for his appeal included nine allegations  all of which were rejected by the court. Vol. I, at 4-6. Riely appealed the circuit court's rejection of two of the nine allegations. At Riely's request, the court appointed an attorney to represent him in his appeal. Vol. I, at 7 & 8-9.

II. ANALYSIS
In his appeal to this Court, Riely presented two issues which are addressed in the following subsections.

*1209 A.

Riely first asks "whether the circuit court erred in failing to allow or appoint counsel to represent him at his probation-revocation hearings and, in so doing, violated his constitutional rights."
The record reveals that the circuit court did not actually "disallow" Riely to have legal representation; it merely refused to continue the hearing in response to Riely's belated request for more time to obtain counsel. Specifically, Riely made the following request: "I didn't have time to [obtain] any legal representation, and I need[] to [contact] the Legal Aid Service ... so ... give me enough time [to contact the] NAACP so they can appoint an attorney to represent me in this case." Vol. II, at 20. Riely, however, knew about the probation-revocation hearing, at the very latest, on December 9, 1987. See Exhibits 1 & 2. Subsequent to that date, two hearings were held. The issue regarding acquisition of an attorney was not raised until the third hearing. Riely was provided sufficient time prior to the third hearing to acquire representation.
The record also reveals that the court did not refuse to "appoint" an attorney to represent Riely at the revocation hearings. Riely did not ask that one be appointed until prior to the fourth hearing  at which time the court granted his request. And as noted in Section I(B) of this opinion, the court granted a second request and appointed an attorney to represent Riely in his appeal to this Court.
All this notwithstanding, probationers (and parolees) do not "have, per se, a right to counsel at revocation hearings." Lassiter v. Department of Social Servs., 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649 (1981) (citing Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)); see Ex parte Laird, 305 So.2d 357, 358 (1974) (discussing Gagnon). Whether probationers have a right to counsel must be answered "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." Gagnon, 411 U.S. at 790, 93 S.Ct. at 1763, 36 L.Ed.2d at 666; see Lassiter, 452 U.S. at 26, 101 S.Ct. at 2159, 68 L.Ed.2d at 649; see also Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (holding that a probationer is entitled to be represented by appointed counsel at a combined revocation and sentencing hearing  unless probationer was sentenced at the time of trial). Because the "facts and circumstances in [revocation] hearings are susceptible of almost infinite variation," the United States Supreme Court opined that "[i]t is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines" for determining when counsel must be provided in order to meet due process requirements. Gagnon, 411 U.S. at 790, 93 S.Ct. at 1764, 93 L.Ed.2d at 666. "Presumptively, it may be said that counsel should be provided in cases [which, for example, are] ... complex or otherwise difficult to develop." Id. at 790-91, 93 S.Ct. at 1764, 36 L.Ed.2d 656, 666-67 (1973) (also noting that counsel should be provided in cases where, "after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim"); see Ex parte Laird, 305 So.2d at 358 ("[T]he [parole] hearing officer violated the rules of the Probation and Parole Board when he did not permit the attorney who appeared for petitioner to participate in the proceedings."). Finally, "[i]n every case in which a request for counsel at a ... hearing is refused, the grounds for refusal should be stated succinctly in the record." Gagnon, 411 U.S. at 791, 93 S.Ct. at 1764, 36 L.Ed.2d at 666-67.
In sum, provision of representation at the first three hearings was neither requested nor necessitated in view of the facts and applicable law. Indeed, the case was not "complex or otherwise difficult to develop." And as noted, counsel was provided upon request by Riely prior to the fourth hearing and prior to his appeal to this Court. Therefore, this Court holds that Riely's allegation of error is devoid of merit.

*1210 B.

Riely next asks "whether the probation-revocation procedure delineated in Mississippi Code Annotated § 47-7-37 (1972) meets the constitutional requirements of the Fourteenth Amendment." The statute to which Riely refers need not be reproduced verbatim. In short, § 47-7-37 delineates probation-revocation procedure.
The issue presented, in essence, is two-fold: (1) whether § 47-7-37 is constitutional on its face, and (2) whether certain minimum procedural requirements of due process were, as alleged, lacking in Riely's case.

1.
In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court delineated minimum due process requirements of parole-revocation procedure. In Gagnon, the Court concluded that the same due process requirements espoused in Morrissey are applicable to probation-revocation procedure. The Court emphasized that a probationer, like a parolee, is entitled to both a preliminary and final revocation hearing under "the conditions specified in Morrissey." See Gagnon, 411 U.S. at 782, 93 S.Ct. at 1760, 36 L.Ed.2d at 662.
Specifically, Morrissey requires the following  vis-a-vis the preliminary hearing: (1) "that some minimal inquiry [or preliminary hearing] be conducted at or reasonably near the place of the alleged ... violation or arrest and that as promptly as convenient after arrest while information is fresh and sources are available"; (2) that "the determination that reasonable ground exists for revocation ... should be made by someone not directly involved in the case" and that the decision maker "need not be a judicial officer"; (3) that the defendant "should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe that he has committed a ... violation"; (4) that "[t]he notice should state what ... violations have been alleged"; (5) that "[a]t the hearing the [defendant] may appear and speak in his own behalf [and] he may bring letters, documents, or individuals who can give relevant information to the hearing officer"; (6) that "[o]n request of the [defendant], persons who have given adverse information on which ... revocation is to be based are to be made available for questioning in his presence";[1] (7) that "the hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the [defendant] or evidence given in support of the [defendant's] position"; (8) that "[b]ased on the information before him, the hearing officer should determine whether there is probable cause to hold the [defendant] for the final decision" regarding revocation; (9) that the decision maker "should state the reasons for his determination and indicate the evidence he relied on ... but it should be remembered that this is not a final determination calling for formal findings of fact and conclusions of law." See generally Morrissey, 408 U.S. at 485-87, 92 S.Ct. at 2602-03, 33 L.Ed.2d at 496-97.
The minimum requirements of due process applicable in a final revocation hearing were recited in Gagnon:
(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.
*1211 411 U.S. at 786, 93 S.Ct. at 1761-62, 36 L.Ed.2d at 664 (citing Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499); see also Black v. Romano, 471 U.S. 606, 611-12, 105 S.Ct. 2254, 2257-58, 85 L.Ed.2d 636, 642-43 (1985) (discussing Gagnon and Morrissey); Bearden v. Georgia, 461 U.S. 660, 666 n. 7, 103 S.Ct. 2064, 2069 n. 7, 76 L.Ed.2d 221, 228-29 n. 7 (1983) (discussing Fourteenth Amendment's imposition of procedural and substantive due process limitations on revocation of "conditional liberties" created through probation).
Admittedly, § 47-7-37 does not expressly accord with the dictates of Gagnon and Morrissey. However, this Court has repeatedly held:
The rule is without exception that when the Court is confronted with a statute a literal construction of which would render it unconstitutional, the Court must adopt such a construction, when reasonably possible, as will save the statute, and at the same time save every savable provision or term in it.
Jackson v. State, 337 So.2d 1242, 1251 (Miss. 1976) (quoting Teche Lines, Inc. v. Danforth, 195 Miss. 226, 254, 12 So.2d 784, 788 (1943), and citing numerous authorities); see also State v. County School Bd., 181 Miss. 818, 829, 181 So. 313, 315 (1938) ("When one construction of a statute would endanger its constitutionality, it will be construed in harmony with the Constitution."). This Court therefore construes § 47-7-37 as inhering the minimum due process requirements set forth in Gagnon and Morrissey.
In sum, this Court holds that § 47-7-37 is constitutional on its face as construed and implemented by this opinion. See Jackson, 337 So.2d at 1256.

2.
This Court now addresses Riely's allegation that certain procedural requirements of due process were not met in his case.
Riely first contends that no preliminary hearing was held, and that he should have been provided one.[2] Admittedly, a hearing expressly designated as "preliminary" was not held. However, three hearings were held in December, 1987, in the circuit court. Examination of the record and briefs leads this Court to conclude that the first and second hearings were, for all practical purposes, equivalent to a preliminary hearing. Restated, the hearings conducted in the case sub judice achieved the intended purposes of requiring a preliminary hearing  as explained in Morrissey.
Riely also contends that he should have been informed of, and provided, the opportunity to cross-examine adverse witnesses. Appellant's Brief at 8-9. Riely's contention is devoid of merit. The evidence shows that Riely was informed of his rights. E.g., Vol. II, at 51 (witness testifying at one of his hearings that he informed Riely of his rights). Riely presented no evidence to the contrary. And the circuit court permitted Riely to question or cross-examine the only adverse witness, Selby Ware. Vol. II, at 10-14.
Riely's last contention  that he was wrongfully denied the opportunity to call his own witnesses  is also devoid of merit. The record reveals that Riely made a last-minute request during the third hearing to call witnesses who allegedly would have testified in his behalf. The court questioned Riely about these potential witnesses and their testimony, and concluded that the witnesses would have offered no new evidence. Indeed, Riely had already admitted that he committed the violations. At most, Riely's witnesses would have testified in regard to his character and would have had no effect on the outcome of this case. See Moore v. Ruth, 556 So.2d 1059 (Miss. 1990).
In sum, the allegation of procedural deficiency is devoid of merit. Riely was provided a fair hearing by an impartial and very patient court.

III. CONCLUSION
Perusal of the record and briefs leads this Court to conclude that revocation of *1212 Riely's probation was not procedurally flawed; moreover, revocation was sufficiently substantiated by the evidence. The circuit court decision is therefore affirmed. See Moore v. Ruth, 556 So.2d 1059 (Miss. 1990); Neal v. State, 525 So.2d 1279, 1280 (Miss. 1987).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The Court added: "However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." Morrissey, 408 U.S. at 487, 92 S.Ct. at 2603, 33 L.Ed.2d at 498.
[2] Appellant's Brief at 7. Riely did sign documents waiving any rights to a preliminary hearing; however, the circuit court permitted Riely to withdraw his waiver. Vol. II, at 19.