# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00269-SCT

*JAY MCCALPIN*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                          01/21/2011
TRIAL JUDGE:                                    HON. JAMES L. ROBERTS, JR.
COURT FROM WHICH APPEALED:     TISHOMINGO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            JAY MCCALPIN (PRO SE)
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                                     BY: JOHN R. HENRY, JR.
NATURE OF THE CASE:                      CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                                   DISMISSED - 02/14/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     In 2000, McCalpin pleaded guilty to one count of fondling and two counts of sexual

battery involving a child under the age of fourteen and was sentenced to serve a term of

fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with ten

years of his sentence suspended, and five years of post-release supervision upon his release

from incarceration.  In 2005, the circuit court revoked McCalpin's post-release supervision

for the first time due to his failure to reside at the residence given to his supervising officer,

failure to notify his supervising officer of at least three changes of residence, and failure of

a drug test for marijuana. At that time, the circuit court judge revoked McCalpin's suspended ten-year sentence, ordering McCalpin to serve three years in the custody of the MDOC with seven years to remain suspended, conditioned upon McCalpin's "good behavior and that he does not violate any laws upon his release from custody."

¶2.     After his second release from incarceration, McCalpin's post-release supervision was revoked for a second time. Thereafter, McCalpin filed a motion for post-conviction relief (PCR) in the circuit court, which was denied. McCalpin appealed the denial of his motion for PCR, and we assigned the case to the Court of Appeals. The Court of Appeals affirmed. McCalpin petitioned this Court for writ of certiorari, which was granted by the vote of four justices of this court.

¶3.     The following dates are relevant to McCalpin's petition for writ of certiorari:

| | |
|---|---|
| April 10, 2012 | The Court of Appeals affirms the circuit court's denial of McCalpin's motion for post-conviction relief. |
| May 1, 2012 | The Court of Appeals issues mandate. |
| May 10, 2012 | McCalpin files his motion for rehearing. |
| May 22, 2012 | The Court of Appeals dismisses McCalpin's motion for rehearing. |
| June 6, 2012 | McCalpin files his petition for writ of certiorari with this Court. |

¶4.     This Court may not review a decision of the Court of Appeals except on writ of certiorari.[1] Importantly, "[r]eview on writ of certiorari is not a matter of right, but a matter

---

[1]Miss. R. App. P. 17(a).

of judicial discretion."[2] Mississippi Rule of Appellate Procedure 17(b) requires that "a party seeking review of a judgment of the Court of Appeals must first seek review of that court's decision by filing a motion for rehearing in the Court of Appeals."[3] Certiorari is to be considered "*only* after the petitioner has sought review of the Court of Appeals decision by way of a petition for rehearing in that court, *filed within fourteen days of entry of its judgment*, unless additional time is allowed."[4] Furthermore, a party's timely motion for rehearing in the Court of Appeals is a "prerequisite for certiorari review by this Court. To hold otherwise would be to deny finality to the Court of Appeals decisions . . . ."[5]

¶5.     McCalpin did not comply with our rules of appellate procedure in seeking rehearing before the Court of Appeals. Mississippi Rule of Appellate Procedure 40(a) states that "a motion for rehearing may be filed within 14 days after a decision is handed down by the . . . Court of Appeals."[6] The decision of the Court of Appeals was entered on April 10, 2012. The mandate issued on May 1, 2012. McCalpin failed to file his motion for rehearing until May 10, 2012, approximately thirty days after the judgment of the Court of Appeals was entered, and nine days after the mandate issued. Appropriately, the Court of Appeals dismissed his motion for rehearing.

---

[2]*Id.*

[3]Miss. R. App. P. 17(b).

[4]*Harris v. State*, 704 So. 2d 1286, 1288 (Miss. 1997), *abrogated by* *Jackson v. State*, 732 So. 2d 187 (Miss. 1999) (emphasis added). *See also* Miss. R. App. P. 40.

[5]*Harris,* 704 So. 2d at 1288.

[6]Miss. R. App. P. 40(a).

¶6. The Court of Appeals correctly dismissed McCalpin's motion for rehearing, filed more than two weeks past the deadline, because it was untimely. Because McCalpin failed properly and timely to seek review of the Court of Appeals decision, we will not consider his petition for writ of certiorari, as he failed to fulfill the necessary prerequisites. As this Court has recognized, "[t]o hold otherwise would be to deny finality to the Court of Appeals decisions."[7] This is especially true in this case, as the mandate for the Court of Appeals decision issued more than eight months ago. Although Rule 2(c) allows this Court to suspend any of our rules of appellate procedure "[i]n the interest of expediting decision, or for other good cause shown . . . ,"[8] McCalpin does not recognize that his petition was untimely or argue that there is good cause to suspend our rules. With all due respect for our fellow Justices, we disagree with the dissent and we find that a good cause does not exist to suspend our rules in this case and decline to do so.

¶7. Alternatively, if McCalpin's petition was not procedurally barred, we would deny it and affirm the circuit court judgment for the several reasons set forth by the Court of Appeals. A probationer does not have to be convicted of a crime to be in violation of his probation but, rather, probation may be revoked when it is more likely than not that a violation has occurred.[9] A thorough review of the record and of the circuit court's conclusion that McCalpin willfully and maliciously harassed a sixteen-year-old girl

---

[7] *Harris*, 704 So. 2d at 1288.

[8] Miss. R. App. P. 2(c).

[9] *Berdin v. State*, 648 So. 2d 73, 79 (Miss. 1994), *overruled on other grounds by Smith v. State*, 742 So. 2d 1146 (Miss. 1999). *See also* Diss. Op. at ¶ 11.

4

convinces us that McCalpin more likely than not violated the terms of his probation. Therefore, we would find that the circuit court did not err in denying McCalpin's motion for post-conviction relief.

¶8. For the foregoing reasons, we dismiss the writ of certiorari.

¶9. **DISMISSED.**

**WALLER, C.J., RANDOLPH, P.J., PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**KING, JUSTICE, DISSENTING:**

¶10. Because I believe that McCalpin's post-release supervision should not have been revoked, and thus, that he is unjustly deprived of his liberty, I would suspend the Rules of Appellate Procedure to grant his untimely petition for certiorari and reverse the Court of Appeals decision. Therefore, I respectfully dissent.

¶11. Mississippi Rule of Appellate Procedure 2(c) provides that, for good cause shown, we may suspend the Rules of Appellate Procedure upon our own motion. Miss. R. App. P. 2(c). An unlawful deprivation of liberty is certainly "good cause" for which the Rules of Appellate Procedure should be suspended.[10]

¶12. McCalpin was unjustly deprived of a liberty interest, because the State cannot show that he more likely than not violated the terms of his post-release supervision. On June 16, 2009, during his post-release supervision, the Belmont Police Department arrested McCalpin

---

[10]It is clear that the revocation of post-release supervision implicates due-process considerations, as the resulting loss of liberty is a serious deprivation. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

and charged him with felony stalking under Mississippi Code Section 97-3-107 (Rev. 2006) (amended 2010).[11] Following McCalpin's arrest, the Mississippi Department of Corrections (MDOC) initiated revocation proceedings against him.

¶13. At the revocation hearing held on August 6, 2009, McCalpin's probation officer testified regarding affidavits made by McCalpin's alleged stalking victim, a sixteen-year-old girl, Lindsey,[12] and her mother. Lindsey stated that a man in a truck passed several vehicles and began following her vehicle closely while she was driving down Highway 25. He remained right on her vehicle's bumper as she turned into her mother's place of employment. When she pulled her vehicle into a parking space in front of the business, the man parked directly behind her so that the vehicles were almost touching. This action effectively trapped Lindsey's vehicle, as she could not back out of the parking space.

¶14. Lindsey's mother approached Lindsey's vehicle and asked Lindsey if she knew the man parked behind her. When Lindsey replied in the negative, Lindsey's mother asked the man if there was a problem. Lindsey's mother later told the police that the man never replied to her question. His gaze remained on Lindsey while Lindsey's mother spoke to him. He began to back his vehicle up, but he stopped and continued to stare at Lindsey.

¶15. Lindsey exited her vehicle and entered the business to get the owner, Boyd Lee Tidwell. When Tidwell came outside, the man drove off at a high speed. Investigator Donald Thomas with the Belmont Police Department testified that Tidwell got in his vehicle

---

[11]The law regarding stalking was amended in 2010. The version applicable to this case is the version that took effect in 2006.

[12]I use the same fictitious name as the Court of Appeals to protect the identity of the minor victim.

and followed the man. Tidwell was able to obtain a partial license-plate number, which Lindsey's mother reported to the police. Investigator Thomas entered combinations of the partial license plate number into the National Crime Information Center database until a combination matched McCalpin's license plate.[13] The police then drove Lindsey and her mother past McCalpin's house, where they both identified his truck as the one involved in the incident.[14]

¶16. McCalpin's uncle testified in his defense. He stated that McCalpin was with him on June 16, 2009, helping him do some work, thus it could not have been McCalpin who followed Lindsey.

¶17. The State claimed that it had shown that probable cause existed that McCalpin committed the crime of felony stalking. McCalpin argued that, even assuming it was him in the truck, he could not have committed felony stalking because his actions were never repeated.

¶18. The circuit court, while explicitly acknowledging that no evidence existed that McCalpin repeatedly followed or harassed Lindsey, found by a preponderance of the evidence that McCalpin committed felony stalking by his willful and malicious act of

---

[13]Investigator Thomas testified that the license plate number he received included all but the last number, so he began running tag numbers starting with the number one as the last digit, and moving on to the number two, and then when he used the number three, it "hit," showing up as belonging to McCalpin. At that point, Investigator Thomas stopped running further tag numbers through the database.

[14]Lindsey's mother's affidavit contains a sworn statement that the man following her daughter was in a dark green truck. It is undisputed that McCalpin's truck is black.

harassment.[15]  *See* Miss. Code Ann. § 97-3-107(1) (Rev. 2006) (amended 2010).  The court revoked McCalpin's post-release supervision and suspended sentence of seven years and sentenced him to serve four years in the custody of the MDOC and three years of post-release supervision.  McCalpin filed a motion for post-conviction collateral relief, claiming that his post-release supervision was unlawfully revoked because the State failed to prove that a crime was committed and that it was more likely than not that he committed the crime.[16]  The circuit-court judge denied his motion.  McCalpin appealed the denial of his motion for post-conviction collateral relief, and the Court of Appeals affirmed the trial court, with two judges dissenting.  McCalpin filed a petition for writ of certiorari with this Court, which we granted.

¶19.    This Court will reverse a lower court's denial of a motion for post-conviction collateral relief only where the circuit court's decision was clearly erroneous.  ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999).  "However, where questions of law are raised, the applicable standard of review is de novo."  ***Id.***

¶20.    It is not necessary that a defendant be convicted of a crime for a court to revoke his probation.  ***Berdin v. State***, 648 So. 2d 73, 79 (Miss. 1994), *overruled on other grounds by* ***Smith v. State***, 742 So. 2d 1146 (Miss. 1999).  Rather, probation may be revoked where it is shown that the defendant more likely than not violated the terms of his probation.  ***Berdin***, 648 So. 2d at 79; *see also* ***Wallace v. State***, 607 So. 2d 1184, 1190 (Miss. 1992) (conditional dismissal, "like parole, [may] be revoked upon a showing that the defendant has more likely

---

[15]The judge noted that the case was a "close call."

[16]The record is silent regarding whether McCalpin was ever convicted of the offense at issue.

8

than not violated the terms thereof"). The State claims McCalpin violated his post-release supervision by committing the crime of stalking.

¶21. The statute governing stalking violations at the time McCalpin was charged states that a person is guilty of stalking where he "willfully, maliciously *and repeatedly* follows or harasses another person, or who makes a credible threat, with the intent to place that person in reasonable fear of death or great bodily injury." Miss. Code Ann. § 97-3-107(1) (Rev. 2006) (amended 2010) (emphasis added).[17] McCalpin maintains, and the circuit court agreed, that, even taking all the State's evidence as true, that he did not repeatedly follow or harass Lindsey. The circuit court, and subsequently the Court of Appeals, stated that willful and malicious harassment sufficed for the crime of stalking to occur, completely reading the phrase "and repeatedly" out of the statute.[18]

¶22. This Court must determine and give effect to the legislative intent of a statute. ***Lawson v. Honeywell Int'l, Inc.***, 75 So. 3d 1024, 1027 (Miss. 2011). "The Court must not broaden or restrict a legislative act." ***Id.*** The Court first examines the language of the statute in determining legislative intent. ***Id.*** "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." ***Id.*** Further, in examining the language of the statute, we note that "[a]ll words and phrases . . . are used according to their common and ordinary acceptation and meaning." Miss. Code Ann. § 1-3-65 (Rev. 2005).

---

[17]The amended statute no longer contains the phrase "willfully, maliciously and repeatedly follows or harasses another person." *See* Miss. Code Ann. § 97-3-107(1) (Supp. 2012).

[18]The circuit court conceded that "repeatedly" did indeed modify "follow."

¶23. The plain meaning of the statute mandates that to commit stalking, a person must repeatedly harass a victim. Finding that "willfully" and "maliciously" modify "harass," but that "repeatedly" does not, impermissibly changes the plain meaning of the statute. Where a statute does not specifically define a word, we use the common and popular meaning. *Lawson*, 75 So. 3d at 1028; Miss. Code Ann. § 1-3-65 (Rev. 2005). The word "and" is used as a connector, and is defined as meaning "along or together with; as well as; in addition to." *Random House Webster's Unabridged Dictionary* 76-77 (2d ed. 2001).[19] Thus, harassment under the statute must be done willfully and maliciously, *as well as* repeatedly to constitute stalking. Furthermore, "repeated"[20] is defined as "done, made, or said again and again." *Random House Webster's Unabridged Dictionary* 1633 (2d ed. 2001). Thus, the harassment must occur more than once.[21]

---

[19]"This Court frequently looks to dictionaries to ascertain the meaning of a word in its common or popular sense." *Lawson*, 75 So. 3d at 1128.

[20]Random House Webster's Unabridged Dictionary notes that "repeatedly" is merely the adverb form of the adjective "repeated." *Random House Webster's Unabridged Dictionary* 1633 (2d ed. 2001).

[21]Other courts have come to the conclusion that harassment must occur repeatedly to constitute stalking. *See, e.g.*, *Lukacs v. Luton*, 982 So. 2d 1217, 1219 (Fla. Dist. Ct. App. 2008) (examining the statutory definition of stalking under a stalking statute nearly identical to the Mississippi stalking statute at hand, and stating that "by its statutory definition, stalking requires proof of repeated acts"); *United States v. Smith*, 685 A.2d 380 (D.C. 1996) (considering a constitutional challenge to the stalking statute); *State v. Randall*, 669 So. 2d 223 (Ala. Crim. App. 1995) (considering a constitutional challenge to the stalking statute); *State v. Saunders*, 886 P.2d 496 (Okla. Crim. App. 1994) (considering a constitutional challenge to the stalking statute); *Pallas v. State*, 636 So. 2d 1358 (Fla. Dist. Ct. App. 1994) (considering a constitutional challenge to the stalking statute).

¶24. In this case, no evidence of repeated acts of harassment exists. The circuit judge and the Court of Appeals both conceded this dearth of evidence.[22] Lindsey and her mother both stated that they had never seen McCalpin before June 16, 2009. Thus, McCalpin's conduct does not constitute felony stalking.

¶25. Furthermore, the crime of stalking requires that McCalpin commit any harassment "with the intent to place [Lindsey] in reasonable fear of death or great bodily injury." Miss. Code Ann. § 97-3-107(1) (Rev. 2006) (amended 2010). The State offered no evidence of McCalpin's intent, nor any evidence that it was more likely than not that they could show that McCalpin had such an intent. Indeed, it is difficult to imagine that the State can prove that McCalpin tailgated Lindsey and stared at her with the intent of creating a *reasonable* fear of *death or great bodily injury*.

¶26. As an alternative to the procedural reason given to perpetuate an injustice, the majority seems to adopt the opinion of the Court of Appeals and finds a lack of merit in McCalpin's claim. The majority states that "[a] probationer does not have to be convicted of a crime to be in violation of his probation but, rather, probation may be revoked when it is more likely than not that a violation has occurred." We would ask of the majority to first identify which specific condition of his probation McCalpin more likely than not violated, and second to indicate whether that violation was a criminal offense, or merely contrary to the conditions of probation. After the majority does so, we would ask the majority to indicate what was the specific reason given to McCalpin for seeking to revoke his probation.

---

[22]In its brief to the Court of Appeals, the State concedes this point, as well.

11

¶27. The majority concludes that it is "convinced" that McCalpin more likely than not violated the terms of his probation "willfully and maliciously harassed a 1sixteen-year-old girl." Maj. Op. ¶7. McCalpin's alleged actions may well fit the dictionary definition of harassment. However, his post-release supervision was not revoked under the dictionary definition of harassment. Instead, it was revoked under the statutory definition of stalking. McCalpin's alleged actions clearly do not come within the statutory definition of stalking.

¶28. If there exists another basis to revoke McCalpin's post-release supervision besides the alleged criminal violation, there is no indication that he was given notice thereof. The petition to revoke McCalpin's post-release supervision specifically stated that he "violated his[] post release supervision, to wit-- On June 16, 2009, Defendant was arrested and charged by the City of Belmont Police Department for the crime of *Felony Stalking* of a 16 year old female in the city limits of Belmont, Mississippi." (Emphasis added.) In order to revoke post-release supervision, the United States Supreme Court has delineated minimum due process requirements. ***Gagnon***, 411 U.S. at 786; ***Riely v. State***, 562 So. 2d 1206, 1210-11 (Miss. 1990) (construing Miss. Code Ann. § 47-7-37 "as inhering the minimum due process requirements set forth in ***Gagnon*** and ***Morrissey***"). Among the minimum due process requirements are a preliminary hearing for which notice must be given to the defendant, with such notice stating what violations of post-release supervision are alleged, as well as a final revocation hearing for which written notice of the claimed violations must be given. ***Riely***, 562 So. 2d at 1210.

¶29. The State specifically gave McCalpin notice that his post-release supervision was violated due to his alleged commission of the crime of *felony stalking*. The State gave no

12

notice of any other violations alleged. A significant portion of McCalpin's defense to the charge was that his alleged conduct did not comport with the statutory definition of stalking. Clearly, he relied on the notice given by the State in the preparation of his defense, as he was entitled to do. Furthermore, the court specifically revoked his post-release supervision upon a finding that his behavior "constitutes harassment of her under this statute, 97-3-107," thus constituted stalking. Such a finding was clearly error. The majority thus appears to advocate revoking McCalpin's post-release supervision in clear violation of the minimum due-process requirements to which McCalpin was entitled. Because the State failed to give McCalpin the notice required under the majority's standard for revoking his post-release supervision, justice requires that this matter be reversed and that the State provide proper notice to McCalpin of the specific grounds upon which it seeks to revoke his post-release supervision, in order that, under the simplest concept of due process, he can mount any defense that he might have.

¶30. The actions of McCalpin did not meet the statutory definition of stalking. Because McCalpin's actions did not meet the statutory definition of stalking, the State did not prove that it was more likely than not that McCalpin violated his post-release supervision by committing the crime of stalking. Nor did the State give McCalpin notice of any other basis for which it was revoking his post-release supervision. Because the State did not prove that McCalpin more likely than not violated the terms of his post-release supervision by committing the offense of stalking, this Court's obligation to do justice suggests that it should suspend the Rules of Appellate Procedure, and reverse the Court of Appeals decision.

**DICKINSON, P.J., KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**