CARLTON, J.,
for the Court:
¶ 1. This case comes before the Court on appeal from a judgment dismissing Robert Smith’s motion for post-conviction relief (PCR). Aggrieved with the circuit court’s judgment, Smith appeals, asserting eight assignments of error: (1) whether Smith’s due-process rights were violated by the failure to afford him a preliminary revocation hearing, (2) whether the circuit court erred in finding no prejudice by the delay between Smith’s arrest and the date of his final revocation hearing, (3) whether the *338 circuit court erred in finding Smith had received sufficient notice of his alleged charges warranting revocation of his probation, (4) whether Smith’s due-process rights were violated by the circuit court’s failure to allow him to present evidence and witnesses in his favor at the revocation hearing, (5) whether the circuit court erred in failing to appoint Smith counsel to assist at his revocation hearing, (6) whether the circuit court erred in failing to grant Smith relief after Smith claimed his probation officer withheld exculpatory evidence from the court during the revocation hearing, (7) whether the circuit court erred in denying Smith’s PCR motion when Smith asserted that the probation officer revoked Smith’s probation solely because of Smith’s change of residence, and (8) whether the circuit court erred in denying Smith relief after Smith claimed he did not commit any crime while on probation. Finding no error, we affirm.
FACTS
¶ 2. On February 5, 2001, the Sunflower County Circuit Court found Smith guilty of armed robbery and subsequently sentenced Smith to ten years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended. The five-year suspension was based on Smith’s compliance with five years of post-release supervision.[1]
¶ 3. Smith was arrested on August 20, 2009, due to his failure to comply with the terms of his post-release supervision, and he was placed in the Bolivar County Jail. On the violation-report form, Smith’s probation officer, Linda Jett-Smith, listed the following parole violations committed by Smith: failure to report to his parole officer, failure to pay supervision fees, failure to submit to a chemical analysis, and failure to pay court-ordered costs. Jett-Smith also noted that Smith no longer lived at his mother’s house. On August 20, 2009, Smith was transferred to the Sunflower County Jail.
¶ 4. On August 27, 2009, Smith signed a waiver in which he waived his right to a preliminary probation revocation hearing. On October 2, 2009, the Sunflower County Circuit Court held a revocation hearing wherein the circuit judge determined that Smith had violated the terms of his post-release supervision. The circuit judge ordered Smith to serve five years in the custody of the MDOC.
¶ 5. Smith filed a motion for reinstatement of probation, which the circuit court treated as a PCR motion, seeking to have the court set aside its revocation order and place Smith back on post-release supervision. The circuit court dismissed Smith’s motion on May 28, 2010. This appeal followed.
STANDARD OF REVIEW
¶ 6. The standard of review for a dismissal of a PCR motion is well stated: “The findings of the trial court must be clearly erroneous in order to overturn a lower court’s dismissal of a post-conviction relief motion.” Willis v. State, 904 So.2d 200, 201 (¶ 3) (Miss.Ct.App.2005) (citing McClinton v. State, 799 So.2d 123, 126 (¶ 4) (Miss.Ct.App.2001)). However, when issues of law are raised, the proper standard of review is de novo. Byrom v. State, 978 So.2d 689, 690 (¶ 5) (Miss.Ct.App.2008) (citing Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss.1999)).
DISCUSSION
I. Preliminary Hearing
¶ 7. As his first assignment of error, Smith asserts that his due-process *339 rights were violated by the revocation of his post-release supervision because the circuit court denied him a preliminary hearing for the revocation of his post-release supervision. A defendant facing revocation of probation is constitutionally entitled to a preliminary hearing in which a hearing officer determines whether probable cause exists to hold the defendant for a final decision concerning revocation; however, the defendant may waive the right to a preliminary hearing and elect to proceed to the final revocation hearing. Grayson v. State, 648 So.2d 1129, 1133 (Miss.1994); Riely v. State, 562 So.2d 1206, 1210 (Miss.1990).
¶ 8. The State argues Smith waived his right to a preliminary revocation hearing to be held prior to his formal revocation hearing because he signed a waiver wherein he relinquished this right. Smith acknowledges that he signed a waiver document, but he claims that JetWSmith coerced him into signing the document. Smith also claims he failed to read the document, and he states that he was unaware of what he was signing.
¶ 9. This Court addressed a similar issue in Crowell v. State, 801 So.2d 747, 750-51 (¶¶ 10-11) (Miss.Ct.App.2000), wherein Kelvin Crowell signed a waiver of his right to a preliminary revocation hearing. This Court found that since Crowell signed the waiver and was a afforded a petition setting forth his probation violations, Crowell had received notice of his alleged violations. Id. The Crowell court also held that Crowell had an opportunity to defend himself against the charge. Id. This Court ultimately found that no violation of Cro-well’s due-process rights occurred, acknowledging that Crowell had signed a waiver and, therefore, had waived his rights to a preliminary revocation hearing. Id.; see also Williams v. State, 4 So.3d 388, 394-95 (¶¶ 24-27) (Miss.Ct.App.2009) (This Court found no denial of due-process rights wherein Anthony Williams signed a waiver to a revocation hearing; the Court found that Williams had received notice and an opportunity to be heard.).
¶ 10. In the present case, the record reflects that Smith indeed signed a waiver wherein he waived his right to a preliminary probation-revocation hearing. The State argues Smith makes no claim that he lacked the ability to read or that the signature on the waiver form was not his signature. Additionally, the record reflects no evidence of coercion by Jet1>-Smith. We thus find Smith voluntarily waived his right to a preliminary hearing and that there was no violation of Smith’s due-process rights. This issue is without merit.
II. Written Notice
¶ 11. Smith next claims that under Riely, 562 So.2d at 1210, he was entitled to receive . written notice of the alleged charges against him warranting the revocation of his post-release supervision. In Riely, the supreme court set forth the minimal due-process requirements for probation-revocation hearings, which include:
(a) written notice of the claimed violations of probation or parole; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a “neutral and detached” hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact[-]finders as to the evidence relied on and reasons for revoking probation or parole.
*340 Id.; see also Miss.Code Ann. § 47-7-37 (Rev.2011) (The procedures associated with the revocation of probation also apply to the revocation of post-release supervision.).
¶ 12. This Court recognizes that the State must give prior notice of the grounds upon which it contends post-release supervision should be revoked, and the notice must be specific and timely so as to allow an individual to mount a defense and the opportunity to gather and present any evidence tending to show that revocation is improper. See Edmond v. Miss. Dep’t of Corrs., 783 So.2d 675, 679 (¶ 14) (Miss.2001). Smith claims he did not receive written notice of the charges against him; thus, he claims his constitutional rights were violated due to the circuit court’s failure to provide him with sufficient notice. However, as the circuit judge acknowledged in his order denying Smith’s PCR motion, the document Smith signed, wherein he waived his right to a preliminary revocation hearing, also set forth the allegations against Smith. Thus, we find that the record reflects that Smith received proper notice of the charges against him. This issue is without merit.
III. Prejudice by Delay
¶ 13. Smith next claims the circuit court erred in failing to find that Smith was prejudiced by the-delay between his arrest and the date of the revocation hearing. Smith argues he was arrested on July 21, 2009, and held until October 2, 2009, without any hearing on the matter. Smith contends the circuit court erroneously stated in its judgment that Smith had been arrested on August 20, 2009. Smith explains that he was arrested by a U.S. Marshal on July 21, 2009, and taken to the Bolivar County Jail. Smith states that he was then transferred to the Sunflower County Jail on August 20, 2009.
¶ 14. The record indeed reflects that Smith was incarcerated in the Bolivar County Jail from July 21, 2009, and then transferred to the Sunflower County Jail on August 20, 2009, where he was held until his revocation hearing. This amounts to a seventy-seven day time period between the date of his arrest and the date of the hearing. The record reflects that the Sunflower County Circuit Court term of court ended July 10, 2009, and the next court term began the first week of October 2009. The record also reflects that the State assured the circuit judge that Smith had received a hearing at the start of the October 2009 court term, which was the next available term in Sunflower County after Smith’s arrest. We do not find the delay between Smith’s arrest and the date of his revocation hearing to be so excessive that it warrants setting aside the revocation. See Morrissey v. Brewer, 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (Revocation hearing “must be tendered within a reasonable time after the parolee is taken into custody”; a lapse of two months would not appear to be unreasonable.). Additionally, we find the misstatement made by the circuit judge inconsequential.
IV. Revocation Hearing
¶ 15. Smith also claims the circuit court failed to advise him that he was allowed to present evidence and witnesses in his favor at the revocation hearing. As a result, Smith claims his due-process rights were violated by his inability to present evidence and witnesses in his favor at the hearing.
¶ 16. We find no evidence in the record showing the circuit judge prevented Smith from calling witnesses or presenting evidence at his revocation hearing. The transcript from the revocation hearing reflects that the circuit judge afforded Smith the *341 opportunity to respond to the charges against him, but Smith failed to do so. This issue is -without merit.
V. Right to Court-appointed Counsel
¶ 17. Smith argues the circuit court denied him his constitutional right to court-appointed counsel at his revocation hearing. Smith claims he contacted the office of Howard Davis Jr., his public defender, seeking Davis’s representation at the revocation hearing. Smith states that Davis’s secretary assured him that Davis would get back in touch with Smith, but Smith claims Davis failed to contact him. Smith claims that due to his mental disorder, he lacked the ability to defend himself of the charges against him. Smith submits that an attorney would have been able to present evidence proving Smith’s mental incompetence.
¶ 18. This Court has recognized that defendants do not necessarily have a right to counsel at probation-revocation hearings. Riely, 562 So.2d at 1209 (citing Lassiter v. Dep’t of Soc. Servs., 452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). However, when the issues relevant to the hearing are complex or difficult to develop, the court should appoint counsel for the defendant. Id.
¶ 19. In his order denying Smith’s PCR motion, the circuit judge stated that the issues relevant to the revocation of Smith’s post-supervision release were neither complex nor difficult to present, and the judge held that Smith did not have a right to court-appointed counsel. As the State points out, the decision to revoke Smith’s probation turned simply on whether or not he had committed the violations of which he was accused.
¶ 20. As to Smith’s claim that he lacked mental competency, we note that according to the revocation-hearing transcript, Jett-Smith stated that Smith was disabled. Also, Smith attached the following documents to his appellate brief: his application for social security disability benefits, the discharge instructions from Bolivar Medical Center, and a MDOC Sick Call Request Form. In his application for social security disability benefits, Smith states that he has been disabled since 2001, and he claims that he has problems holding jobs due to his “attitude.” On Smith’s sick call request form, he claims: “I am having a problem and its [sic] getting worse. I feel that I am about to hurt someone. Need help ASAP.” However, Smith fails to provide any affidavits or actual proof that he lacked mental competence during the time he failed to comply with the terms or conditions of his post-release supervision or that he lacked mental competency at his probation-revocation hearing. See Vanwey v. State, 55 So.3d 1133, 1136 (¶ 6) (Miss.Ct.App.2011).
VI. Misrepresentation by Probation Officer
¶21. For the purposes of efficiency and clarity, we will combine Smith’s next two issues and address them together. Smith argues that Jett-Smith, his probation officer, withheld exculpatory evidence from the circuit court and misrepresented facts during his revocation hearing. Smith claims he informed Jett-Smith of his appointment with the social security office to determine whether he would be approved for social security disability benefits. Smith also claims that due to his incarceration, he missed the opportunity to see if he would be approved for the benefits. Smith asserts Jett-Smith revoked his probation solely because Smith had changed his residence without notifying Jett-Smith. Smith argues that he informed Jett-Smith that he would like to change his residence, and Smith claims *342 that Jett-Smith approved the move. Smith claims the circuit judge revoked his post-release supervision based solely on the fact that Smith’s residence had changed.
¶ 22. After reviewing the transcript from the revocation hearing, we find no evidence in the record to substantiate Smith’s allegations that Jett-Smith withheld evidence or misrepresented facts. Other than his assertions listed in his PCR motion, Smith provided no evidence to show that Jett-Smith had approved his change of residence or that she possessed awareness of his plans to move. It is clear from the transcript that Jett-Smith advised the circuit judge that Smith failed to pay his court-ordered fees and also failed to report to her. Additionally, as previously stated, the transcript from the revocation hearing reflects the circuit judge afforded Smith the opportunity to respond to the charges against him, but Smith failed to do so. Mathis v. State, 882 So.2d 798, 800 (¶¶ 3-7) (Miss.Ct.App.2004). This issue is without merit.
VII. Additional Crimes
¶ 23. For his last assignment of error, Smith cites to United States v. Rodgers, 588 F.2d 651, 654 (8th Cir.1978) and submits that he did not commit an additional crime while on post-release supervision. Smith thus claims he should have been entitled to consideration of an alternative to incarceration. In Rodgers, the United Starts Court of Appeals, Eighth Circuit expressed its concern that the district court failed to consider a lesser penalty where the appellant had fully complied with the conditions of his original sentence, except for the reporting requirement. Id.
¶ 24. In the present case, however, the record is clear that Smith violated other probation requirements besides his failure to report to Jett-Smith. We once more acknowledge that the waiver of Smith’s right to a preliminary hearing provided Smith with written notice of the multiple alleged probation violations charged against him. Also, during the revocation hearing, Jett-Smith informed the circuit judge, with Smith present, of the Smith’s alleged probation violations. The transcript from the hearing also reflects that when considering a sentencing recommendation for Smith, Jetfl-Smith stated: “We really only have two options that I know of — unless the court knows something to do with him — that’s prison or extended probation. He’s demonstrated that he’s not going to comply with the terms of his probation in the past.”
¶ 25. Mississippi Code Annotated section 47-7-34(2) states, in part, that:
The period of post-release supervision shall be conducted in the same manner as a like period of supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish. Failure to successfully abide by the terms and conditions shall be grounds to terminate the period of post-release supervision and to recommit the defendant to the correctional facility from which he was previously released. Procedures for termination and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence.
In the present case, the circuit court set out terms and conditions to which Smith was to adhere, and any violation of those conditions was a violation of his post-release supervision. A violation of these conditions gave the circuit court the authority to revoke Smith’s post-release supervision and remand him back into the custody of the MDOC to serve the remainder of his term. Therefore, despite Smith’s assertion that he did not commit *343 an additional crime while on post-release supervision, we do not find that the circuit court erred in revoking Smith’s post-release supervision and ordering Smith to serve five years in the custody of the MDOC. See Williams, 4 So.3d at 392 (¶¶ 14-15). This issue is without merit.
¶ 26. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.

. Smith was released from his initial five-year term by the MDOC in December 2005; he then began his five-year term of post-release supervision.