# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01654-COA

**DAVID SHANKLIN A/K/A DAVID E. SHANKLIN**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                               APPELLEE

DATE OF JUDGMENT:                 05/07/2013
TRIAL JUDGE:                            HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED:   WASHINGTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        EDWARD BLACKMON
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                        BY: LADONNA C. HOLLAND
NATURE OF THE CASE:               CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:         MOTION FOR POST-CONVICTION RELIEF
                                        DISMISSED
DISPOSITION:                         AFFIRMED - 06/28/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.

### BARNES, J., FOR THE COURT:

¶1.    David Shanklin appeals the dismissal of his motion for post-conviction relief (PCR) by the Circuit Court of Washington County. Finding no error, we affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.    On September 30, 2010, Shanklin pleaded guilty to possession of 4.4 grams of cocaine with intent to distribute. Consistent with the State's recommendation, the trial judge sentenced Shanklin to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with all twenty years suspended, conditioned upon Shanklin's successful completion of five years' supervised probation and fifteen years' unsupervised

probation. Shanklin was also ordered to pay a $5,000 fine, all court costs, $500 to the Crime Victims' Compensation Fund, and $300 in lab fees, at the rate of $50 per month. The trial judge gave Shanklin a couple of months before he was required to begin the payments.

¶3. On October 23, 2012, an affidavit was filed by Shanklin's probation field officer, citing he had violated the following conditions of probation: he had not reported to the MDOC since December 12, 2011;[1] he owed $1,125 in unpaid supervision fees; and he owed $6,375.13 in unpaid court-ordered fees. On the same day, a warrant was issued for Shanklin's arrest.

¶4. On November 7, 2012, Shanklin was arrested by the U.S. Marshals Service in Louisiana, although apparently he had not obtained permission to travel there. He was returned to Mississippi. On November 26, 2012, Shanklin signed a waiver of the right to a preliminary probation-revocation hearing, acknowledging that he had the right to retain a lawyer to represent him at the hearing, but that the MDOC was not responsible for appointing a lawyer to represent him.

¶5. On December 3, 2012, a revocation hearing was held. The trial court found that Shanklin had violated at least three terms of his probation: failing to report as directed, failing to pay supervised fees, and failing to pay court-ordered fees and assessments. The trial court stated the failure to report was the most egregious violation. Accordingly, the trial

---

[1] In a letter filed with the trial court in October 2013, Shanklin requested a copy of an extradition waiver he signed for permission to go out of State. Shanklin later explained that he was extradited to Georgia in March 2011, and his probation officer at the time was aware of his extradition. He was released on bond with a court date on December 5, 2011, and ended up serving some time in Georgia.

court revoked Shanklin's probationary status and ordered him to serve the twenty years previously suspended in the custody of the MDOC.

¶6.     Aggrieved, Shanklin filed a PCR motion in February 2013. In his motion, he requested being considered for MDOC's Intensive Supervision Program (ISP), or "house arrest." Shanklin argued that there were certain material facts not heard by the court that required the vacation of his conviction and/or sentence, namely, that at the time he pleaded guilty he believed he would not face revocation for his inability to pay fines. Shanklin also claimed he did not know he could have an attorney present at the revocation hearing. After Shanklin was sent a letter by the circuit clerk in March 2013 stating he would be arrested if he did not pay delinquent fees of $1,400, Shanklin's family paid all of his fees, or $6,376. Shanklin also allegedly misapprehended that if he paid the full amount of the fees, he would be given house arrest.

¶7.     In May 2013, the trial court dismissed Shanklin's PCR motion, finding no merit to his arguments, and Shanklin appealed.

## STANDARD OF REVIEW

¶8.     This Court will not reverse a trial court's dismissal of a PCR motion absent a finding the trial court's decision was clearly erroneous. *Madden v. State*, 75 So. 3d 1130, 1131 (¶6) (Miss. Ct. App. 2011) (citation omitted). Issues of law are reviewed de novo. *Id.*

## ANALYSIS

¶9.     Shanklin makes two arguments on appeal: whether his probation was improperly revoked, and whether his waivers of the right to a preliminary probation-revocation hearing

3

and the right to counsel were knowing and voluntary.[2]

¶10. "Probation may be revoked upon a showing that the defendant 'more likely than not' violated the terms of probation." *McDonald v. State*, 163 So. 3d 991, 993 (¶6) (Miss. Ct. App. 2015) (citation omitted). "A willful refusal to pay [fines] can result in probation revocation and imprisonment, but a failure to pay after 'sufficient bona fide efforts . . .' would require the court to consider alternative measures of punishment." *Berdin v. State*, 648 So. 2d 73, 78 (Miss. 1994) (overruled on other grounds) (quoting *Bearden v. Georgia*, 461 U.S. 660, 672 (1983)). "[A]n indigent may not be incarcerated because he is financially unable to comply with an otherwise lawfully imposed sentence of a fine." *Cassibry v. State*, 453 So. 2d 1298, 1299 (Miss. 1984) (citing *Bearden*, 461 U.S. at 672).

¶11. The trial court noted in its May 9, 2013 order that since Shanklin's revocation hearing, his family paid all of his court-ordered fees in full, but regardless, the court had never revoked a defendant's probation solely on the defendant's inability to pay fees. However, the court routinely revokes probation based upon a defendant's failure to report as directed, as was the case with Shanklin; this violation was Shanklin's most egregious. According to the State, which examined MDOC's records, Shanklin's initial probation intake was on November 11, 2010, and his last physical reporting date was March 7, 2011. Approximately

---

[2] Shanklin argues that since he pleaded guilty in reliance on erroneous sentencing information about his probation, his plea cannot be knowing or voluntary, citing *Washington v. State*, 620 So. 2d 966, 968 (Miss. 1993). We are not persuaded by this argument – revocation of probation is the issue here, not an invalid guilty plea that was entered over five years ago. Shanklin never filed a PCR motion attacking the plea's validity, and the time to do so has passed. *See* Miss. Code Ann. § 99-39-5(2) (Rev. 2015) (explaining three-year statute of limitations for PCR motions runs from entry of judgment of conviction where movant pleaded guilty).

two weeks later (March 23, 2011) Shanklin called to explain that he had been extradited to Georgia on some charges, and after his court date on April 7, 2011, he would return to Mississippi. However, it was discovered that Shanklin had posted bond and had been released on March 17, 2011. MDOC began looking for Shanklin in July 2011, but was unable to make contact with him until November 2011. He reported again in December 2011, but failed to receive a travel permit to return to Georgia for another court date. In March 2012, contact was made with Shanklin's father, who said Shanklin had to serve "some days" in Cobb County, Georgia. Shanklin was finally found and arrested on November 7, 2012, in Louisiana. In summary, Shanklin only reported four times in 2011, and never reported in 2012. He also failed to receive permits to travel out of state to either Georgia or Louisiana.

¶12. Shanklin argues that the trial court should have inquired about "circumstances beyond his control" that prevented him from reporting and paying his fees before revoking his probation. He cites to *Bearden*, where the United States Supreme Court held that courts contemplating probation revocation must inquire about the reasons for failure to pay, and whether the reasons are willful; otherwise, a due-process violation results. *Bearden*, 461 U.S. at 672-73. Shanklin would apply this rule to probation-reporting violations without citing applicable authority, claiming the State failed to prove his failure to report was willful, or inform him he needed a travel permit. However, even if this rule were the law, Shanklin has the burden of proof in a PCR motion – not the State. *See* Miss. Code Ann. § 99-39-23(7) (Rev. 2015). Further, his sentencing order discussed the terms of his probation, which he

5

was to follow, including reporting to the probation or parole officer as directed and remaining within a specified area. This argument has no merit.

¶13. Second, Shanklin claims his waivers of the right to a lawyer and the right to a preliminary probation-revocation hearing were not "knowing and voluntary"; he would not have waived his rights had he known that the trial court was going to order him to serve the entire twenty-year sentence, in spite of his paying all of his fines and court costs. He alleges that the district attorney's office advised him he would only be sentenced to house arrest (ISP) if he paid all of his fines. Shanklin further contends that had he known he was going to have to serve his twenty-year sentence, he would not have paid the fees, but instead used the money to hire a lawyer.

¶14. More accurately, however, Shanklin did not "waive his right to a lawyer," but to the revocation hearing. Neither Shanklin nor the record furnishes proof that his waiver was not knowing and voluntary. Further, he provides no proof of the district attorney's offer of ISP in exchange for payment of the fines.

¶15. Regarding his right to counsel at the hearing, the waiver form provides that the defendant has "the right to retain a lawyer to represent [him] in this Administrative Hearing[;] however, the Department of Corrections will not appoint a lawyer for [him]." It is well established that an indigent's right to have counsel provided for him at a probation-revocation hearing is not automatic. *Baldwin v. State*, 891 So. 2d 274, 277 (¶12) (Miss. Ct. App. 2004) (citing *Riely v. State*, 562 So. 2d 1206, 1209 (Miss. 1990)). The right to appointed counsel is determined on a case-by-case basis; however, it is clear a probationer

will have the right to counsel when the issues at the hearing are "complex or otherwise difficult to develop." *Riely*, 562 So. 2d at 1209 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)).

¶16.   The trial court stated Shanklin never inquired about the right to have an attorney present, or moved for a continuance of the proceeding to obtain an attorney.  Further, the probation-revocation issues were neither complex nor difficult to present – there was ample evidence Shanklin violated the terms of his probation.  This argument is not persuasive.

¶17.   Based on the foregoing, the trial court did not abuse its discretion in dismissing Shanklin's PCR motion.

¶18.   **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

     **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**