[No. 4596-II.   Division Two.   April 14, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES IVOR MURRAY, *Appellant.*

898

*John G. Ziegler,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Douglas B. Whalley, Senior Deputy,* for respondent.

PETRICH, J.—James Ivor Murray appeals the revocation of his probation on the ground, among others, that the trial court in violation of his due process rights, did not disclose the evidentiary basis of its decision by means of either written findings or oral opinion. We agree and accordingly reverse.

Defendant pleaded guilty to delivery of a controlled substance in July 1978, and in the following October was granted a suspended sentence pursuant to RCW 9.92.060. Twice in November, and once in December of the same year, the trial judge signed orders modifying probation. The second of the modification orders, dated November 15, 1978, deleted a previously ordered jail term and ordered Murray to immediately commence residing at Pioneer Cooperative Association Halfway House (Pioneer Center) for not less than 60 days. A December 15, 1978 order imposed three new conditions of probation: Murray (1) was not to associate with anyone of dubious reputation or who is on active probation or parole; (2) was neither to change his address nor employment without permission of the supervising officer; and (3) was not to frequent any places where drugs or narcotics are used or possessed illegally.

During the first part of February 1979, Pioneer Center dropped Murray from its program after his failure to return on two occasions.

On June 12, 1979, the trial judge held a probation revo-

cation hearing to consider six alleged violations.[1] Defendant testified that he had completed 60 days in the Center before leaving, and the State adduced no evidence to the contrary. In fact, his probation officer, Thomas Porro, testified that the time Murray was at the Center "could be very close to 60 days."

Undisputed evidence indicated that on February 20, 1979, Murray visited Porro and advised him that he planned to reside in "Springwood" with Don Latham, who was also on probation. Although Murray told Porro that Latham was on probation, Porro assented to defendant's temporary stay at Latham's residence. Soon afterward, Porro learned that Latham had a drug problem. The next morning he went to Latham's residence, and informed Murray that he could no longer stay there. Murray complied.

There was also testimony that on March 16, 1979, police came in contact with defendant at a friend's residence while investigating the drug–related kidnapping of one of the occupants. Defendant played no culpable role in the kidnapping, but knew that the stepbrother of the kidnapping victim was a drug dealer, and that he also resided at the residence. In spite of his probation officer's disapproval, Murray frequently visited the residence.

The trial judge revoked Murray's probation on the ground that he (1) associated with Latham, a known felon, and (2) left the Pioneer Center program without permission of his probation officer or the court. In its oral opinion the trial court stated:

---

[1]The State alleged that (1) defendant associated with a known felon, contrary to the instructions of his probation officer; (2) defendant was found residing at a place in Kent, Washington, known for illegal drug activities, in February 1979; (3) defendant left the Pioneer Center program without permission of his probation officer or the court; (4) defendant was found by the police at the residence of a known drug dealer on March 20, 1979; (5) defendant was found by the police to be present among others involved in a kidnapping scheme relating to a $12,000 or $16,000 illegal drug transaction in South King County, during the month of March 1979; and (6) defendant failed to appear for his probation revocation hearing on March 29, 1979.

The first violation on the Notice of Probation Revocation submitted by the prosecutor's office, that Mr. Murray associated with a known felon, contrary to the instructions that [*sic*] his probation officer, on that violation I will make a finding that Mr. Murray has violated his probation by associating with a Mr. Latham. . . .

. . .

Number 3, that the defendant left Pioneer Center program without permission of his probation officer or the Court; I will make a finding of violation.

No written findings of fact were entered and to this omission defendant assigns error.

Although defendant raises numerous other assignments of error, the question which is dispositive of this appeal is whether in the absence of written findings the trial judge's oral opinion provided a sufficient record of the evidence upon which the judge relied, consistent with due process requirements, and the reasons for revocation. We hold that it did not.

■ We begin our analysis by acknowledging that probation is a matter of grace, privilege, or clemency granted to the deserving and withheld from the undeserving within the discretion of the trial judge. *State v. Kuhn,* 81 Wn.2d 648, 650, 503 P.2d 1061 (1972). So long as a revocation proceeding comports with the minimum requirements of due process, and revocation is based on evidence sufficient to reasonably satisfy the court that probation conditions have been breached, an appellate court will not find an abuse of discretion. *State v. Drake,* 16 Wn. App. 559, 563, 558 P.2d 828 (1976).

A "written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole", is one of the minimum requirements of due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 36 L. Ed. 2d 656, 664, 93 S. Ct. 1756 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 488, 33 L. Ed. 2d 484, 499, 92 S. Ct. 2593 (1972). *Accord, State v. Johnson,* 9 Wn. App. 766, 772, 514 P.2d 1073 (1973). However, a court's failure to make written findings for revoking probation does not deny a probationer

due process where the court's oral opinion is contained in the record and indicates the evidence relied upon, as well as the reasons for revocation. *State v. Myers,* 86 Wn.2d 419, 429, 545 P.2d 538 (1976); *State v. Fry,* 15 Wn. App. 499, 501, 550 P.2d 697 (1976); *State v. Smith,* 13 Wn. App. 859, 862, 539 P.2d 101 (1975).

Even assuming, without deciding, that the trial court adequately explained its reasons for revocation,[2] the court failed to indicate the evidence upon which it relied in deciding that conditions of probation had been breached. The court neglected to state upon what evidence it concluded that (1) defendant had associated with a known felon, contrary to the instructions of his probation officer, and (2) defendant left Pioneer Center without permission of his probation officer or the court.

In the absence of written findings, the lower court's failure to create an oral record sufficient for review resulted in a violation of defendant's due process rights. Under these circumstances it cannot be said that "no useful purpose would be served, . . . by remanding the matter solely to complete the formality of providing written reasons." *See State v. Sonneland,* 80 Wn.2d 343, 350, 494 P.2d 469 (1972).

Ordinarily, therefore, we would reverse and remand to the trial court for entry of written findings which comply with the minimum requirements of due process. We note, however, that the trial judge who presided at the revocation

---

[2] "THE COURT: As I told Mr. Murray at the time of the original sentencing—I have a note that I told him—and as I told him at the time we modified his probation, there would be one opportunity, and one opportunity for probation in this court only. If I were to back down from that, I would be doing a disservice not only to Mr. Murray but everyone else I put on probation, because I say the same thing to everyone else. There is one opportunity for probation in this court. If somebody "blows it", to be colloquial, they go to prison. That's my policy, and I see no reason to deviate from it in this particular case; not only on the basis of the violations I have already found, but the highly suspicious activity of Mr. Murray involved in this drug–kidnapping incident, even if he were a mere observer.

"Therefore, I will commit Mr. Murray to the Department of Institutions for not more than ten years, based on revocation of his probation, the violations already found to date. I will recommend a minimum term of 12 months."

hearing is no longer a judge on the King County Superior Court. Accordingly, we must reverse and remand with direction to conduct a new revocation hearing.

PETRIE, A.C.J., and PEARSON, J., concur.

Reconsideration denied May 13, 1981.

Review denied by Supreme Court July 17, 1981.