648 So.2d 1129 (1994)
Leroy GRAYSON
v.
STATE of Mississippi.
No. 91-KP-01215.
Supreme Court of Mississippi.
December 21, 1994.
*1130 Leroy Grayson, Pro Se.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
HAWKINS, Chief Justice, for the Court:
On October 21, 1988, Appellant Leroy Grayson (hereinafter Grayson) pled guilty to possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. He received a suspended sentence of ten years, five years supervised probation, and a fine of $5,000. Two years later, on July 17, 1990, an Affidavit was sworn out stating that Grayson had violated the terms of his probation by committing the crime of sale of cocaine. On that same day, Grayson waived his right to a preliminary probation revocation hearing. An indictment was handed down for this crime on September 13, 1990, and Grayson was arraigned on October 4, 1990.
A trial on the charge of sale of cocaine held December 11, 1990, ended in a mistrial. A probation revocation hearing was then held that same day after which an Order of Revocation of Probation was issued. On February 6, 1991, Grayson filed a motion to review and modify the order of revocation. A hearing was held on this motion on February 22, 1991, at which the motion was denied. On November 13, 1991, Grayson filed a motion in the nature of a post-conviction relief motion which was denied on November 21, 1991. That same day the lower court filed an Amended Order of Revocation of Probation.
Grayson appealed on December 3, 1991.

FACTS
On January 15, 1988, the grand jury of Washington County indicted Grayson on two counts: possessing cocaine on October 19, 1987, with intent to sell, and possessing marijuana on the same date with intent to sell.
On October 21, 1988, there was a hearing before Circuit Judge Gray Evans at which time Grayson, represented by an attorney, pleaded guilty to both counts. Grayson had only gone to the third grade in school, and on the date of the hearing informed the court he was 73.[1] When asked if he could read and write, he answered, "A little, not much."
The court sentenced him to ten years imprisonment on count one, but suspended its execution, and placed Grayson on supervised probation for a period of five years. The court also fined him five thousand dollars.
Grayson received the same imprisonment on count two, to run concurrently with count one. No fine was levied on the second count.
On July 17, 1990, W. Roy Long, field officer, made an affidavit before Circuit Judge E.M. Bogen that Grayson had on June 14, 1990, violated the conditions of his probation by committing the crime of the sale of cocaine *1131 on June 14, 1990. On the same date Grayson executed a "Waiver of Right to Preliminary Probation Revocation Hearing," acknowledging therein that he was aware that the basis for the revocation was the crime of sale of cocaine on June 14. The waiver then contains the following printed paragraph:
After having these charges fully explained to me, and without waiving any other rights I may have, DO HEREBY VOLUNTARILY WAIVE and relinquish my right to a Preliminary Probation Revocation Hearing, and further request that I be returned to the Circuit Court for a full revocation hearing before the Circuit Judge.
A revocation hearing did not directly follow, however. Instead, the matter was presented to the Washington County grand jury, which on September 13, 1990, indicted Grayson for the sale of cocaine on June 14, 1990, and as a second offender. A capias under this indictment was issued September 13, and Grayson placed under arrest thereunder September 27. Grayson was arraigned October 4 and through his attorney entered a plea of not guilty.
The next entry in the record on this appeal is the following handwritten note, "Exhibit C-1," filed December 11. "At this point, we the jury, are seeming at a point of impass[e] with a talley [sic] of 9 guilty and 3 not guilty. We wait for Further instruction."
On the next page is the following handwritten note:
Please continue your deliberations with a view toward reaching a unanimous verdict, if you can do so without violence to your individual judgment.
We will order sandwiches and drinks for you at your request.
 (signed) E.W. Bogen,
 Circuit Judge
On the next page is another handwritten note, filed December 11, 1990: "After prolonged heated discussion we the Jury have reached a 10 guilty and 2 not guilty verdict. After much discussion this Vote has slim chance of changing. We respectfully await your further instruction's [sic]."
The court declared a mistrial on December 11 and on the same date made a bench ruling with Grayson standing before him at the bench that Grayson had violated the terms of his probation:
As a consequence of your arrest and indictment in Cause No. 21,738 charging you with sale of cocaine, the probation office filed an affidavit in Cause No. 20,314 charging you with violation of your probation by committing the crime of sale of cocaine. And pursuant to the request of counsel, the charge of violating your probation has been held in abeyance pending the outcome of this case.
Now, the jury was unable to agree on the charge of sale of cocaine and I've declared a mistrial in that case, but I find on the basis of the evidence produced here in Court on that charge that there is sufficient evidence to lead me to the conclusion that you did violate your probation by making such a sale. There is further evidence from you acknowledging possession of two firearms in your residence, and [sic] automatic pistol and a 30.06 rifle, and the possession and ownership of these weapons is also in violation of your probation.
For those reasons then I order that your probation in Cause No. 20,314 be revoked and that you be ordered to serve the ten-year sentence originally imposed in that cause number. You will be remanded to the custody of the sheriff of Washington County for transportation and delivery to the Department of Corrections.
That will be all, counsel. Thank you.
Court stands adjourned.[2]
The court entered a mistrial order that same date, and continued the cause until the next term. The Department of Corrections, also on the same date, was notified of Grayson's *1132 sentence for violation of his probation, and that he was then in jail.
On February 5, 1991, Grayson's attorney filed a motion with the court to reconsider, pointing out that Grayson had no prior notice before the court's December 11, 1990, ruling that he was charged with possession of a firearm. The motion also asked the court to reconsider the severity of Grayson's sentence because of his age, 76 at the time, and his being crippled and in poor health.
The court conducted a hearing on the motion on February 22, 1991, at which time Grayson, again represented by counsel, testified he had no notice of the firearm violation prior to the December 11, 1990, hearing. Counsel made no attempt to offer any evidence as to Grayson's guilt or innocence of sale of cocaine in June 1990. The court then made the following ruling:
BY THE COURT:
Well, if that had been the only evidence offered against Mr. Grayson, I would not have revoked his probation. But the evidence was clear that he was involved with the sale of cocaine. Now the jury couldn't reach agreement, but the evidence was abundantly clear that he was involved in making a sale of cocaine with there being numerous law enforcement eyewitnesses. It was the same activity that he'd been involved in when he was convicted of the underlying offense that got him on probation in the first place, and I recognize that he is elderly. He claims to be in bad health. He has this deformed arm, but that's something that he's had all his life. He's been a successful businessman all his life selling this and other illegal substances as well as farming and carrying on legal business activities. He is seventy-four years old. I don't know what the condition of his health is, but it was good enough to deal drugs. He got one chance when he was put on probation. I'm not inclined to set aside the order, Counsel. I'm sorry.
BY MR. McILWAIN:
Thank you.
BY THE COURT:
The motion will be denied.
On November 13, 1991, Grayson filed a "Motion to Reinstate Probation," giving a ground therefor that he was not given a hearing that comported with the Constitution, contending a violation of due process. He alleged he had been given no advance notice of the revocation hearing, that it was not disclosed what would be considered, that he was given no opportunity to present witnesses, that he was denied his right to confront witnesses.
The court entered an order on November 20, 1991, again noting that at Grayson's trial the evidence was clear that "Petitioner was involved in making a sale of cocaine, and for that reason his probation was revoked." The order concluded:
At all stages of proceedings against the Petitioner, he has been represented by able counsel, he was timely served notice of the charges against him, and he has been given a full opportunity to respond to those charges. The motion to Reinstate Probation is not well taken and is denied.
The court's amended order of revocation of probation, dated November 20, 1991, stated his probation was revoked for "selling cocaine," was revoked in accordance with the provisions of § 47-7-37 of the Code, and that Grayson was sentenced to serve 10 years in the custody of the Mississippi Department of Corrections.
Grayson has appealed.

LAW

WAS APPELLANT DENIED DUE PROCESS OF LAW BY HAVING HIS PROBATION REVOKED BY THE CIRCUIT COURT OF WASHINGTON COUNTY?
Any analysis of probation revocation due process in Mississippi must begin with Riely v. State, 562 So.2d 1206 (Miss. 1990). This case adopted the minimal probation revocation due process requirements as set out by the United States Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Gagnon had in turn adopted the standards for parole revocation created by Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *1133 applied them to probation revocation. Riely gives as requirements for a final probation revocation hearing:
(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.
Riely, 562 So.2d at 1210.
These cases also enumerate the requirements for a probation revocation preliminary hearing, but as Grayson waived his right to such a hearing, these requirements do not concern us. Any due process errors must therefore arise from the final hearing.

Morrissey held that
[D]ue process is flexible and calls for such procedural protections as the particular situation demands. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action.
Morrissey, 408 U.S. at 481, 92 S.Ct. at 2600.
Morrissey further held, "[I]t is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure. Id.
And, while the penumbra of rights surrounding an accused in a criminal trial are by no means required in a parole revocation, nonetheless the parolee has some rights to due process. Id., 408 U.S. at 480, 92 S.Ct. at 2599-2600.
As to parole, Morrissey observed: "Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison." Id., 408 U.S. at 477, 92 S.Ct. at 2598.
The Court followed with noting numerous restrictions under which a person on parole might be required to live, but held that having done so, "Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." Morrissey, 408 U.S. at 479, 92 S.Ct. at 2599. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Morrissey, 408 U.S. at 482, 92 S.Ct. at 2601.
We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.
... .
... . Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.
Yet, the State has no interest in revoking parole without some informal procedural guarantees.
... .
... . The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole.

*1134 ... .
... . And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness.
.... .
... . What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.
Morrissey, 408 U.S. at 482-484, 92 S.Ct. at 2601-02.
The Court then set forth the minimum basic requirements of every revocation hearing which this Court enunciated in Riely, and above set forth.
While Grayson waived the rights he had to a preliminary revocation hearing, if indeed they were not in any event followed in this case, and we have no occasion to examine such rights in this case, just as clearly he waived no due process rights to a probation revocation hearing. See Morrissey, 408 U.S. at 485-87, 92 S.Ct. at 2602-03.
Grayson at a minimum was entitled to some advance notice of the revocation hearing, and an opportunity to make some preparation for it. He was not given that in this case when the circuit judge simply brought him before the bench immediately after declaring a mistrial and proceeded to revoke his probation. There is nothing in the record before us to suggest that Grayson at any time agreed that in event his trial resulted in anything other than a conviction the court could summarily revoke his probation. He had no meaningful probation revocation hearing December 11, 1990.
At a probation hearing, a violation of the probation conditions may be shown by establishing a criminal conviction or by actual proof of the commission of a crime apart from the conviction. When the state does not prove that the defendant was convicted of a crime which would be a basis for revocation, it must present actual proof that the defendant engaged in such criminal conduct.
State v. Esprinal, 488 So.2d 228, 229 (La. 1986).
This being said, Grayson was subsequently given an opportunity for a hearing, and he made no complaint of the summary nature in which his suspended sentence was revoked at the hearing February 22, 1991.
Our problem in this case is that the circuit judge never made any factual finding upon which he based his decision to revoke Grayson's suspension of sentence. Clearly, it was based upon a trial which had just resulted in a mistrial. The record of that trial is not before us, however, and there is no way in which we can assess the evidence upon which the circuit judge based his revocation. There may very well have been sufficient evidence to hang Grayson higher than Haman, but regrettably it is not in this record. At a minimum Grayson was entitled to a factual finding from which this Court can determine (1) that it was based upon evidence which this Court can review upon appeal, and (2) sufficient to justify revocation.
"Under the minimum due process rights afforded a defendant in a parole or revocation proceeding, he is entitled to `a written statement by the factfinders as to the evidence relied on and reasons for revoking... .'" United States v. Lacey, 648 F.2d 441, 445 (1981) (citations omitted). "However, a court's failure to make written findings for revoking probation does not deny a probationer due process where the court's oral opinion is contained in the record and indicates the evidence relied upon, as well as the reasons for revocation." State v. Murray, 28 Wash. App. 897, 627 P.2d 115, 117 (1981). Furthermore, "[s]ince due process contemplates that the revocation hearing must comport with principles of fundamental fairness, pro forma language and routine phrases will not satisfy the Morrissey requirement of a written statement." United States v. Martinez 650 F.2d 744, 755 (5th Cir. Unit A July 1981) (citations omitted). See generally, Ex Parte Belcher, 556 So.2d 366 (Ala. 1989); Moore v. Ruth, 556 So.2d 1059 (Miss. 1990); Williams v. State, 409 So.2d 1331 (Miss. 1982). The record in this case contains neither a specific written statement nor an oral *1135 transcript which would reveal the evidence relied on and the reasons for revoking Grayson's probation.
We therefore must remand this matter to the circuit court to meet these requirements. This should impose no particular impediment upon the State, because a transcript of Grayson's trial undoubtedly was taken by a court reporter and the evidence upon which the court relied is readily available.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
DAN M. LEE and PRATHER, P.JJ., SULLIVAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PITTMAN and BANKS, JJ., not participating.
NOTES
[1] Grayson was born November 13, 1918.
[2] The circuit judge was in error in stating that "As a consequence of your arrest and indictment in Cause No. 21,738 charging you with sale of cocaine, the probation office filed an affidavit in Cause No. 20,314 charging you with violation of your probation... ." As above noted, Grayson was charged in July 1990 by the field officer with violating the terms of his probation, but was not indicted until September 1990. We see no consequence in this discrepancy, however.