CARLTON, J., for the Court:
¶ 1. Alvin Barksdale appeals the Marshall County Circuit Court’s dismissal of his motion for post-conviction relief (PCR). Finding no error, we affirm.
FACTS
¶ 2. Barksdale was indicted in 2009 for the sexual battery of S.R.,[1] an eleven-year-old child. On August 26, 2010, Barksdale pleaded guilty, and pursuant to the plea agreement, was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years suspended, and five years of supervised probation.
¶ 3. The record contains Barksdale’s guilty-plea petition, which he signed to confirm that he understood the terms of his plea agreement and sentence. The plea petition stated that Barksdale would serve fifteen years,
all suspended upon successful completion of five years [of] supervised probation and registration as a sex offender. [Barksdale] is not to visit the residence of the victim, and may only be in the victim’s presence if the victim’s mother and/or aunt and/or grandmother is present.[2]
¶ 4. The trial court entered a probation order, again stating Barksdale’s sentence to fifteen years in the custody of the MDOC, all to be suspended, and placing Barksdale on supervised probation for five years. The order set forth the terms and conditions of Barksdale’s supervised probation, including that he not commit any offenses against the laws of the state, that he permit the probation officer to visit his home, and that he not have visitation with S.R. unless in the presence of S.R.’s mother, aunt, or grandmother.
¶ 5. On November 21, 2010, nearly three months after Barksdale entered his guilty plea, Holly Springs Police Officer Detrick King responded to a 911 call placed from *333 the home of S.R.’s grandmother.[3] Officer King interviewed S.R. and the grandmother. S.R. alleged that she was asleep on the couch when Barksdale woke her up, held a knife to her throat, and stated “the last time we didn’t f* *k, but I’m gonna do it this time.” Barksdale then forcibly raped S.R. S.R. reported the incident to her grandmother. When the grandmother confronted Barksdale before calling the police, he denied any wrongdoing and fled the scene.
¶ 6. Barksdale’s probation officer, Eric Knox, subsequently filed a petition to revoke Barksdale’s probation, alleging that Barksdale committed the following acts that amounted to violations of the terms of his probation: unsupervised contact with S.R., sexual assault of S.R., and failure to make himself available to permit the search of his residence by a probation officer after the sexual assault.
¶ 7. At the revocation hearing, Officer Knox testified that while on probation, Barksdale had been charged with the statutory rape of S.R. Officer Knox also testified that Barksdale admitted that he had been alone with S.R., and that Barksdale had been unavailable for questioning after the incident. Detective Elijah Wilson of the Holly Springs Police Department also testified regarding S.R.’s report and the investigation of the statutory rape.
¶ 8. On December 7, 2010, after finding that Barksdale had in fact violated the terms of his probation, the trial judge ordered Barksdale to serve the fifteen years of his sentence that had previously been suspended.
¶ 9. Barksdale filed a motion to vacate and set aside his conviction and sentence on May 14, 2012, asserting the following: that his constitutional rights were violated; that the State failed to establish that he violated the terms of his probation; and that he had received ineffective assistance of counsel. The trial court treated the motion as a PCR motion, and' dismissed the motion. Barksdale appeals from that dismissal.
STANDARD OF REVIEW
¶ 10. Absent a finding that the ruling was clearly erroneous, a circuit court’s dismissal of a PCR motion will not be reversed on appeal. Thomas v. State, 99 So.3d 1169, 1170 (¶ 4) (Miss.Ct.App. 2012). “However, when issues of law are raised, the proper standard of review is de novo.” Steele v. State, 991 So.2d 176, 177 (¶3) (Miss.Ct.App.2008) (citing Brown v. State, 731 So.2d 595, 598 (¶6) (Miss.1999)).
¶ 11. Mississippi Code Annotated section 99-39-11(2) (Supp.2012) provides a PCR motion may be dismissed “[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any reliefl.]” In State v. Santiago, 773 So.2d 921, 923-24 (¶ 11) (Miss.2000), the Mississippi Supreme Court held “dismissal of a PCR motion is proper where ‘it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.’ ” (Quoting Turner v. State, 590 So.2d 871, 874 (Miss.1991)).
DISCUSSION
¶ 12. As previously stated, Barksdale pled guilty to sexual battery of an eleven-year-old, which occurred in 2009. The trial court sentenced him to fifteen years in the custody of the MDOC, to be suspend *334 ed, and placed him on supervised probation for five years. Barksdale’s present claims relate to the revocation of his probation imposed in 2009 for this sexual-battery conviction. He claims that his Fourteenth Amendment rights were violated because he failed to receive proper notice of the probation violation. Barks-dale also claims that the State based its case solely on statements made against him, and therefore he submits that the State failed to establish that he violated the terms of his probation. Barksdale alleges that the State failed to give him warning that it planned to use statements made by S.R. and her grandmother against him, which Barksdale claims is a violation of Mississippi Rules of Evidence 803(24) and 804(b)(5). Barksdale claims that he was denied the opportunity to confront his accusers, stating that he should have been allowed the opportunity to cross-examine S.R. and her grandmother.
¶ 13. A review of the law applicable to Barksdale’s claims of error reflects that the minimum due-process requirements for a revocation hearing are:
(1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing such confrontation); (5) a neutral and detached hearing body or officer; and (6) a written statement by the fact-finder as to the evidence relied on and reasons for revoking the probation.
Agent v. State, 30 So.3d 370, 372-73 (¶ 6) (Miss.Ct.App.2010) (citing Loisel v. State, 995 So.2d 850, 852 (¶ 7) (Miss.Ct.App.2008)). Additionally, the amount of evidence presented at a revocation hearing must be enough to “show that the defendant ‘more likely than not’ violated probation.” Younger v. State, 749 So.2d 219, 222 (¶ 13) (Miss.Ct.App.1999); see also Anderson v. State, 89 So.3d 645, 653 (¶ 22) (Miss.Ct.App.2011).
¶ 14. With respect to notice of the probation violations, the record reflects that Barksdale’s November 22, 2010 arrest warrant specified his probation violations. The record also contains a “Preliminary Probation Revocation Hearing Report Disposition Sheet,” which suggests that a preliminary probation revocation hearing was held, where the hearing officer determined that sufficient reasonable cause existed to hold Barksdale for a formal revocation hearing in the circuit court, but no transcript of this hearing appears in the record. The record further reflects that Barksdale refused to sign the following documents: his preliminary-probation-revocation-hearing guide, the waiver of his preliminary probation-revocation hearing, and the waiver of his rights to notice and/or a waiting period prior to the preliminary probation hearing.
¶ 15. At the revocation hearing, Officer Knox, Barksdale’s probation officer, testified that in October 2010, the Holly Springs Police Department advised him that Barksdale had been charged with a new criminal charge of statutory rape involving the same victim as in the 2009 sexual-battery conviction. Officer Knox stated that after Barksdale fled from S.R.’s grandmother’s house, the Holly Springs Police Department had to enlist help from the U.S. Marshals Service to locate Barksdale. Officer Knox explained that ultimately someone ended up driving Barksdale to the police station, and he and police officers were able to question Barks-dale about the new charges.
¶ 16. Knox testified that when he interviewed Barksdale regarding the new statu *335 tory-rape charge, Barksdale clearly admitted that he had been alone with S.R., and this admission established a violation of the express terms and conditions of his probation. Knox also testified that Barks-dale “made himself unavailable to any of the officers, to his supervising officer ... in regards to this incident,” which violated another term and condition of Barksdale’s probation.
¶ 17. Detective Wilson also testified at the revocation hearing about the investigation into the November 21, 2010 incident. Detective Wilson stated that based on S.R.’s and her grandmother’s statements, the police department had enough evidence to charge Barksdale with statutory rape.
¶ 18. Barksdale, proceeding pro se, refused to testify at the hearing, but through statements made during his cross-examination of the witnesses, he denied telling Officer Knox that he was alone with S.R. Barksdale also accused Detective Wilson of basing the case against him solely on statements from S.R. and her grandmother, which Barksdale referred to as “hearsay.” This Court has recognized “that the Mississippi Rules of Evidence do not apply to proceedings granting or revoking probation.” Younger, 749 So.2d at 221 (¶ 9). “Therefore, the rules barring hearsay do not apply, and hearsay evidence is properly admittable in such hearings.” Id. When asked about the evidence from the rape kit performed on S.R., Detective Wilson explained that the rape kit was still at the crime lab for testing.
¶ 19. The transcript shows that the judge gave Barksdale the opportunity to testify or call witnesses, but Barksdale responded that none of his witnesses were at the hearing. Although the trial judge failed to enter a written statement of his findings of fact, he did explicitly state on the record his reasons for revoking Barks-dale’s probation. See Grayson v. State, 648 So.2d 1129, 1134 (Miss.1994) (“[A] court’s failure to make written findings for revoking probation does not deny a probationer due process where the court’s oral opinion is contained in the record and indicates the evidence relied upon, as well as the reasons for revocation.”).
¶ 20. Barksdale’s brief also simply states: “[Djeny [counsel] and ineffective assistance] of [counsel].” However, Barksdale provided no other argument or claim for this assertion in his PCR motion. In Davis v. State, 36 So.3d 456, 461 (¶ 17) (Miss.Ct.App.2010), this Court held: “A defendant must allege with ‘specificity and detail’ that his counsel’s performance was deficient and prejudicial to his defense.” (Citing Robertson v. State, 669 So.2d 11, 13 (Miss.1996)). Barksdale fails to provide any evidence of ineffective assistance of counsel and relies on mere allegations in his brief. Our supreme court has established that probationers do not have a per se right to counsel, but counsel may be required in cases that are complex. Riely v. State, 562 So.2d 1206, 1209 (Miss.1990). Barksdale’s case does not present any complex questions of fact or law. Therefore, we find his claim is without merit.
¶ 21. After a review of the record, we find no violation of Barksdale’s due-process rights occurred relating to the revocation proceedings. We also find that the evidence presented at the revocation hearing was sufficient to show that Barks-dale more likely than not violated the conditions of his probation. Accordingly, we affirm the trial court’s dismissal of Barks-dale’s PCR motion.
¶ 22. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS *336 APPEAL ARE ASSESSED TO MARSHALL COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. We have used initials to protect the identity of the victim.

. The issue of Barksdale's unlawfully lenient sentence is not before this Court on review. See Miss.Code Ann. §§ 97 — 3—95(l)(d) (Rev. 2006) (defining sexual battery) & 97-3-101(3) (Rev.2006) ("Every person ... convicted of sexual battery under Section 97 — 3—95(1 )(d) who is eighteen (18) years of age or older shall be imprisoned for life ... or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years.”). In his brief, Barksdale claims that he received the lenient sentence due to lack of DNA evidence.

. The record reflects that S.R.’s grandmother was Barksdale’s girlfriend, and that S.R.’s grandmother continued to date Barksdale even after he pleaded guilty to the statutory rape of S.R.