# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 83769-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PEREACE E. HORTON, | |
| Appellant. | |

BIRK, J. — Pereace Horton appeals a superior court order revoking a deferred sentence following Horton's plea agreement on a misdemeanor. We conclude the superior court revocation did not meet the minimum due process requirement that the evidence relied on and the court's reasoning be adequately identified, we accept the State's concession of error in regard to the term of probation, and we decline to reach in the first instance the application of new statutory provisions governing restitution. We reverse and remand.

I

By information dated November 6, 2018, the State charged Horton with first degree theft, a class B felony. According to the certification for determination of probable cause, a criminal investigator with the Department of Social and Health Services (DSHS) investigated Horton's receipt of DSHS benefits. Generally, according to the State, in benefits applications and other documents submitted to DSHS between June 3, 2013 and June 16, 2015, Horton represented having

income of only about $416.00 per month in child support. Despite this, a "cross match" with the Department of Employment Security led to an investigation by DSHS showing Horton was on payroll with a private employer and earned income at least from May 2013 through June 2015. Horton had also indicated to DSHS she was single, but DSHS's investigator located records showing she had married her still current husband in 2009. DSHS claimed it overpaid Horton $16,651.00 in food benefits between December 1, 2012 and June 30, 2015.

In pretrial proceedings, the superior court entered an agreed order setting restitution of $500.00 to DSHS, and an additional order setting restitution of $1,000.00 to DSHS. On July 2, 2019, Horton paid $500.00; on August 27, 2019, she paid $250.00; and on October 1, 2019, she paid $400.00.

E-mail discussions in the court file indicate the prosecutor's office discussed the case with DSHS. By e-mail dated January 23, 2020, the State offered a plea agreement. The proposed agreement contemplated amending the charge to third degree theft, a gross misdemeanor, and Horton's agreement to pay as restitution DSHS's claimed overpayment. Horton would pay directly to DSHS. The prosecutor stated, "My understanding is that DSHS generally gives 60 months to pay back restitution with $75 being the minimum payment. What your client's payment plan is will be between her and DSHS. Her payments may deviate from the above practice." The record does not show it was discussed, but we calculate that paying $75.00 per month for 60 months would total $4,500.00.

On February 26, 2020, the parties appeared in court to enter the plea agreement. Horton's counsel described the agreement as "a heavily negotiated

resolution that's taken some time for us to get here." Defense counsel indicated, "[T]he idea is that Ms. Horton would set up a payment plan with them based on her financial means, which are pretty limited." Defense counsel noted the stated overpayment was not solely amounts allegedly overpaid to Horton, but included other payments obtained by her husband. Horton intended to move to vacate the charges within two years, "even if the full amount hasn't been paid off," based on an anticipated track record of making timely payments on a payment plan. The statement of defendant on plea of guilty indicated the State "does not object to Defense moving for dismissal after 24 months of timely payments, even if full payment has not been made."[1] The court accepted an amended information charging third degree theft, and entered a sentence deferred for 24 months, with unsupervised probation, requiring Horton to refrain from criminal law violations and pay additional restitution of $15,151.00. The order setting the additional restitution indicated "payments [are] to be made directly to DSHS – interest waived per agreement of [the] parties."

On January 11, 2022, the court held a review hearing on the suspended sentence. The State argued, "One of the conditions was for Ms. Horton to pay restitution in the amount of $15,151 to DSHS." The prosecutor described having documentation of Horton's payments to date and having provided it to Horton's counsel, and according to the record provided a copy to the court, but this court's

---

[1] The State did not commit to any position on the anticipated motion for dismissal.

3

record does not indicate this documentation was filed at the time of the hearing.[2] The prosecutor stated, and the documentation showed, Horton paid $100.00 on November 19, 2020; $300.00 on February 3, 2021; and $400.00 on September 29, 2021. At the time of the review hearing, Horton had paid $1,950.00 and still owed $14,814.61. After listing Horton's payment dates and the amount outstanding, the State argued Horton was "not in compliance with the conditions of the deferred sentence." The prosecutor acknowledged, "The State realizes that we've been going through a pandemic, which has caused a lot of hardship on many people, and that this is a large sum of money, which involved a rather large financial welfare case." Defense counsel sought dismissal of the charges, arguing, "[I]t was contemplated that [Horton] would not have the full amount paid by the time the deferred period had run and that we could still seek a dismissal." Horton addressed the court, indicating she lost her job at the start of the COVID-19 pandemic and received regular paperwork from DSHS indicating she was to pay $25.00 "every three weeks or something along that line." We calculate that payments of $25.00 every three weeks for two years would total $850.

The court revoked the deferred sentence, ruling, "I can't find that there's been sufficient compliance to be able to dismiss this case." Defense counsel argued for a final opportunity to make additional payments, but the court did not grant any explicit relief, commenting, "[I]t's such an extraordinary amount outstanding. I mean, if a third of it had been paid, a half of it been paid, that'd be

---

[2] At oral argument, the State conceded that the document was not filed at the time of the hearing. It came into the record almost a month later attached to the State's response to Horton's motion to reconsider.

4

one thing. But, this was a pretty small amount in comparison to the entire amount." The court entered an order revoking the deferred sentence and found Horton violated the terms and conditions of her probation by "[f]ailing to pay restitution as required," but with Horton participating by telephone it did not enter a final judgment and sentence.

On February 4, 2022, Horton moved for reconsideration of the order revoking the deferred sentence. After the review hearing and before the motion for reconsideration, Horton paid $500.00 on January 19, 2022; $3,000.00 on January 20, 2022; and $2,000.00 on January 26, 2022. With these additional payments, Horton had paid $7,450.00, and still owed $9,314.61. Horton indicated in her motion for reconsideration that she had been unable to confer with her counsel at the Zoom review hearing, but, if she had been able to, she would have informed her counsel she could potentially "deplete her savings account and borrow money from friends and family members to demonstrate to the Court her willingness to comply – even though it would put her in a financial bind." The State opposed reconsideration, arguing, "A condition of probation was that Horton pay restitution in the amount of $15,151 to DSHS within 24 months of sentencing."[3] The State also argued the motion for reconsideration was untimely.

On February 17, 2022, the court held a final sentencing hearing. The court denied the motion for reconsideration without stating a rationale. The court

---

[3] The deferred sentence ordered Horton to pay the entire amount of restitution, but nothing in the record supports the State's assertion that an express condition of probation was that she do so "within 24 months." The State's e-mail offer of a plea agreement adverting to DSHS's typically allowing "60 months" for repayment contradicts this assertion.

imposed a suspended sentence of 364 days in jail with credit for time served, a further 24 month term of unsupervised probation, and required restitution of the outstanding amount after credit for the payments Horton had made. On March 1, 2022, the court entered an order finding Horton indigent for purposes of appeal. Horton timely appeals.

II

In challenging the revocation of the deferred sentence, Horton argues her due process rights were violated because the court's finding that she violated a condition of probation is not supported by the record. We conclude the superior court's revocation of Horton's deferred sentence did not meet the minimum due process requirement that the evidence relied on be adequately identified.

A

Minimum due process is required in probation revocation hearings. Arment v. Henry, 98 Wn.2d 775, 778, 658 P.2d 663 (1983). A " 'written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole,' is one of the minimum requirements of due process." State v. Murray, 28 Wn. App. 897, 900, 627 P.2d 115 (1981) (quoting Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). However, a court's failure to make written findings for revoking probation is not fatal if the court indicates, on the record, what evidence it relied on. State v. Robinson, 120 Wn. App. 294, 300-01, 85 P.3d 376 (2004).

In Murray, the court held the trial court's failure to create an oral record sufficient for review resulted in a violation of the defendant's due process rights.

6

Murray, 28 Wn. App. at 901. Even if the trial court had adequately explained its reasons to revoke the defendant's probation, it did not state on what evidence it relied on to make two conclusions. Id. The Murray court reversed and remanded with direction to conduct a new revocation hearing, reasoning under the circumstances it could not be said that " 'no useful purpose would be served, . . . by remanding the matter solely to complete the formality of providing written reasons.' " Id. at 901-02 (quoting State v. Sonneland, 80 Wn.2d 343, 350, 494 P.2d 469 (1972)).

We are unable to determine the evidence the court was relying on, or its reasoning, in reaching its conclusion that Horton failed to pay restitution "as required." The judgment and sentence indicated the order of restitution would "be paid through DSHS." The State's plea offer and Horton's statements at the review hearing indicated it was contemplated Horton would effectuate that requirement by following a payment plan acceptable to DSHS. As far as the record indicates, the potential payment terms between Horton and DSHS could have called for total payments of potentially either $4,500.00 ($75.00 per month for 60 months) or $850.00 ($25.00 every three weeks for two years). At the time of the revision hearing, Horton had paid $800.00 since the order deferring sentence, and by the time of the court's imposition of sentence Horton had paid $7,450.00. At oral argument before this court, the State conceded our record is silent as to the monthly amount Horton was required pay to DSHS.[4] In contrast, the State

---

[4] Wash. Court of Appeals oral argument, State v. Horton, No. 83769-9-I (Jun. 15, 2023), at 16 min., 46 sec. to 17 min., 12 sec., https://tvw.org/video/division-1-court-of-appeals-2023061204/.

appeared to argue at the hearing that Horton was not in compliance because she had not paid the full amount, which the State contended was required on the face of the order deferring sentence. The State acknowledged that "in the Plea Agreement the recommendation specifically states that Defense could move for a dismissal after 24 months of timely payments even if the full payment has not been made." But the State argued that dismissal was not appropriate because the "financial summary report shows that her payments were not timely."

The court's oral ruling stated Horton had not sufficiently complied because "there is an extraordinar[y] amount of restitution still outstanding." We cannot tell if the court believed Horton's noncompliance was her failure to pay the entire amount as the State argued, or if it was her failure to pay enough of the total amount, which would reasonably involve consideration of any agreed payment plan. We also cannot tell if the court revoked Horton's sentence because of her failure to comply with the agreed payment plan, which is not in the record. The State did not offer and the superior court did not make any written findings further explaining the order revoking Horton's deferred sentence.

Because the record does not indicate the evidence or the reasoning on whose basis the superior court found Horton not in compliance, we reverse and remand with direction to conduct a new revocation hearing.

B

We are not persuaded by the State's argument, which is unsupported, that Horton's efforts "likely left the court with the impression that Horton had attempted to 'game the system' by paying a small amount of the total restitution obligation . . .

8

and then, only after realizing that the court was not going to let her skate by in this fashion, coming up with over $5[,]000 in funds in a few short weeks." The State's impugning of Horton's motives is the likely impetus for Horton's emphasizing in reply the argument that the court's revocation "reinforce[d] existing systems of bias and contribute[d] to racial disproportionality."[5] As Horton's authorities show, racial bias and disproportionality have a long and persisting history of entrenchment in legal proceedings, including in the context of probation.

Nevertheless, while the State's unsupported argument about Horton's motives misses the mark, Horton does not on this record establish that the superior court proceedings were affected by racial bias or disproportionality.

III

The State concedes "the trial court was not permitted to impose an additional 24 months of probation." The statute governing the applicable statutory probation authorization states in relevant part, "[T]he superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, not exceeding the maximum term of sentence or two years, whichever is longer." RCW 9.95.210(1)(a). We accept the State's concession and hold that in any order entered on remand the superior court must not impose probation exceeding two years in violation of RCW 9.95.210.

_____

[5] Horton did not assign error on the basis of racial bias or disproportionality, and we do not interpret Horton's reply as attempting to raise a new claim of error for the first time in reply. Although she did not assign error in her opening brief, Horton did observe, "[p]rosecuting people of color for crimes of poverty further entrenches systemic inequities."

IV

Effective January 1, 2023, an amendment to RCW 9.95.210 took effect which states in relevant part, "At any time, including at sentencing, the court may determine that the offender is not required to pay, or may relieve the offender of the requirement to pay, full or partial restitution and accrued interest on restitution where the entity to whom restitution is owed is . . . a state agency, . . . if the court finds that the offender does not have the current or likely future ability to pay." RCW 9.95.210(4). We decline to apply the statute in the first instance. On remand, the parties may present appropriate argument to the superior court concerning the applicability of, and potential relief under, the January 1, 2023 amendments.

We do not reach Horton's remaining claims of error. Reversed and remanded.

_Birk, J._

WE CONCUR:

_Díaz, J._        _Coburn, J._